Daniel, Judge.
The lands described in the declaration formerly belonged to James Wade. He‘, on the 16th day of March, 1832, conveyed said lands to Lloyd, by a deed properly proved and registered. The defendant claims under Lloyd. The lessor of the plaintiff claims title by virtue of several judgments and executions against Wade — a sale, and *419 sheriff’s deed to himself. The two County Court executions, The Bank v. Wade and Huggins v. Wade and thejusti-ces’ execution, Jesse Webb v. Wade, are each tested after the date of the deed to Lloyd; therefore they may be laid out of the question, as the plaintiff can derive no title under them. The plaintiff produced also a justice’s judgment, Jno. Waison v. Wade, and an execution signed by the justice, tested on the 27th day of November, 1830. At the foot of the said execution, there is this entry, “March 1st, 1832, execution renewed.” There is no justice’s name signed to this attempted renewal of the execution. We think that the signature of a justice is absolutely necessary to an alias, as well as to the original execution, on a justice’s judgment. The levy of the constable, therefore, under this entry, was without authority and void. The original execution at the end of three months became defunct — the act of Assembly directing it to be returned in three months from the date thereof. We think that the levy and sale, under this judgment, execution and- proceedings thereupon, gave the plaintiff no title.
The lessor then produced a justice’s judgment, obtained by James Riggs v. Wade, and an execution on the same tested 10 March, 1832, and on the same day the constable made this return thereon “March 10th, 1832, this execution levied on all of the lands of James Wade, lying on Q.ueen’s creek.” There was notice issued to Wade, which was served in the time prescribed by law, an order of sale by the County Court, and a venditioni exponas. We are, however, of the opinion that the constable’s levy on this execution must be regarded prima facie insufficient to sustain the venditio-ni. The law requires, that for want of goods and chattels to satisfy the execution, then the officer shall levy on lands and tenements, setting forth on the execution what lands and tenements he has levied on, “where situate, on what water course, and whose land it is adjoining.” In Borden v. Smith, 3 Dev. & Bat. 34, we have said when an execution upon a justice’s judgment isle\ied upon land, and returned to the County Court, it is essential to the validity of the order, which the court is authorised to make, to sell the land *420 levied on, that the land should be particularly described; and a levy generally upon the defendant’s “lands” without fur-j o j x ther specification or description, will not support such order nor ¡Jqq saiQ made under it. Queen’s creek may run through the whole extent of the county: Wade may have had many tracts of land, and at different places on this creek. Such a description recited in the venditioni, does not inform the sheriff what lands he is to sell. The sale was at the Court House, the people probably would not know from this dis-cription where the lands lay. The neighborhood, the quantity, the quality and every other circumstance that a prudent bidder would like to know before he parted with his money, would seem to be wanting. By such a levy, a defendant might be deprived of valuable lands for a mere trifle — it is too much like guess work. We do not mean to say that the levy must be in the very words of the act of Assembly.— But that a description containing a fart only of that prescribed in the act, must be taken to be insufficient in point of the certainty thereby required, until it be shewn, as a fact, that it identified the land levied on as effectually as it would have been identified by a description conforming to that prescribed in the act. As no such evidence is stated to have been offered in this case, we hold that the Judge erred in instructing the jury that this .venditioni conveyed a valid authority to sell. It is true that Wade might have moved the County Court to stay the order of sale for the uncertainty in the levy. But we do not think, that his omitting to make such a motion, cures the defect in the levy.
The lessor produced also a justice’s judgment in favour of Elijah Riggs v. James Wade, with an execution on the same, tested August 23rd, 1831: execution renewed January 16th, 1832, and signed by the justice. The officer returned on this execution as follows: “February 17th, 1832, this execution levied on all the lands of James Wade, lying on the head of Ketchum’s mill pond, adjoining the'lands of said Ketchum.” Here, we may say that the Act of Assembly was substantially, nay literally complied with, except in the omission of Ketchum’s Christian name, and this was unnecessary, as he is described as the same .Ketchum whose mill *421 pond had been before mentioned. All the proceedings up to the sheriff’s sale under this levy were agreeable to law. Un-J ° der this venditioni, the Sheriff was authrised to sell all the lands of Wade, lying on the head of Ketchum’s mill pond, adjoining the lands of the said Ketchum. And if Huggins bought, and the sheriff conveyed these lands under that ven-ditioni, a good title passed thereby. There were several objections made to the plaintiff’s recovery. First, that the constable’s levy did not bind the land. Answer, we are of the opinion, that the levy under Elijah Riggs’s execution did bind the land; and if that land was sold under the venditioni ex-ponas, the lien had relation back to the time when the levy was made, so as to defeat the sale made afterwards by Wade. Lash v. Gibson, 1 Murp. 266. Second objection, the description of the land in the levy is too indefinite and vague. Answer, the description in the levy under Elijah Riggs’s execution, is almost in the very words of the Act of Assembly, substantially corresponds with it, and therefore is not too vague. Third objection, the sale was fraudulent and void by reason of the sheriff’s setting up too many parcels of land at the same time. Answer, the sheriff had authority to sell “all the lands of Wade, lying on the head of Ketchum’s mill pond, adjoining the lands of the said Ketchum.” If the lands embraced in that description, comprehended more tracts or parcels of land than one, a sale en masse by the sheriff will still be supported, because it is warranted by his execution, and no fraud is shewn either in the sheriff or the purchaser. Den ex dem. Wilson v. Twitty, 3 Hawks, 44—Den ex dem. Thompson v. Hodges, 3 Hawks, 51. Fourth objection, too many parcels of land are united in the same declaration, and no recovery can be had. Answer, the quantity of the land declared upon need not correspond with that which the plaintiff claims. He may declare for an indefinite number of messuages, and he will recover according to the quantity to which he proves title. 2 Leigh’s N. P. 886.— Adams on Eject. We see no force in this objection, especially as it appears that all these tracts adjoined each other and constituted in fact but one tract in the possession of the defendant. Fifth objection, the defendant was proved to be in the possession of only one of the messuages, viz, that on *422 which he lived, and the plaintiff was not entitled to recover beyond that., Answer, the defendant had cultivated the other tracts of land for turpentine, in the usual way, for two years. The witnesses proved that he was in this way in possession of all the land. We think this possession was all that was necessary for the plaintiff 'to prove in this action. Sixth objection, the sheriff’s deed does not recite the executions by virtue of which the lands were sold; and the description of the land in the sheriff’s deed is too indefinite. Answer, as to the first branch of this objection, the sheriff, in his deed, after specially reciting; the bank execution, goes on to say that he sold by virtue of this, “ and also of other jfien facias and venditioni exponas.” If a sheriff sell under an execution authorising him to sell, although in his deed to the purchaser he make an erroneous recital of the power under which he sells, yet his deed is good and passes the title. Den ex dem. Hatton v. Dew, 3 Murph. 260. The recital is not an essential part of this deed; it affirms no fact, and will not amount to an estoppel. This deed, however, does recite that the sheriff sold under venditioni expoliases, That he sold under Elijah Riggs’s venditioni must be presumed, we think, until the contrary be shewn, if he had that execution in his hands at the time, and sold the lauds thereby directed to be sold. The second branch of this objection is, that the description of the laud in the sheriff’s deed is too vague and uncertain. The words of the deed are, “ I do hereby bargain and sell unto Luke Huggins, his heirs and assigns, all the right, title and estate which the said James Wade has in and to a certain piece of land lying and being in the county of Onslow, on Qmeen’s creek, being all the land which the said Wade owned on said creek; to have and to hold, <fcc.” The description of the land in a deed is certainly of great importance. As to which, it is evident that nothing can be described but by some general denomination applied to the individual subject, by the addition of its proper name, or of some peculiar circumstances of locality, quantity, quality, possession or title. Burton on real property, 81. In this deed there are peculiar circumstances of both locality and title; it is all the right and title in and to a certain piece *423 of land of James Wade, lying on Queen’s creek, in county, being all the land said Wade owned on said creek. That is certain which can be rendered certain. We must say, however, that this description is far from being as particular as we could wish to see in sheriffs’ deeds. The jury have found that all the lands described in the declaration are covered by this deed: We, however, think that only the land mentioned in the levy under Elijah Riggs’s execution could have been rightfully sold by the sheriff, or conveyed to the pu rchaser. Now, whether that land be in fact the same with the land described in the plaintiff’s declaration — or be a part thereof only — or be in fact land situate elsewhere and no pait of it — does not appear. And as we think that the Judge erred in holding that all the venditionis exhibited in evidence were sufficient in law, and it may be that the verdict establishing the plaintiff’s title to the laud contained in the declaration was founded upon the other venditionis, we must reverse the judgment, and direct the Court below to award a venire de novo.
Per Curiam. Judgment reversed.