## FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

KENNETH J. FOREMAN, JR. AND WIFE, MARY FRANCES O. FOREMAN, TRUSTEES UNDER DECLARATION OF TRUST DATED AUGUST 6, 1981 v. S. H. SHOLL, M.D., EDWARD HENRY SHOLL, ELEANOR B. DEEX, GEORGE A. McELVEEN, JR., B. G. NORTH, B. G. WORTH, MRS. BERNARD GERMANN, B. O. TOWNSEND, MRS. IKE C. LOWE, MRS. PAUL MOONEY, W. T. DENMAN, III, MARGARET G. DENMAN, JANIE C. WILLIAMSON, EL DORA WILLIAMSON, OEHLESE WILLIAMSON, JAMES WILLIAMSON, JAMES L. WILLIAMSON, JR., JOHN GATLING, MRS. W. J. JOHNSON, MRS. ETHEL HIGHSMITH, MRS. ANNIE BROOKS, GARNETT T. BROOKS, MRS. A. H. McCORMICK, JAMES A. McCORMICK, DOROTHY HARLAN McMILLAN, EUGENE MAXTON HARLAN, WILLIAM WADE HARLAN, JOHN BURKE HARLAN, VIRGINIA AUTEN DIXON, F. I. STONE, ANNE STONE BARNETTE, T. R. SAMPSON, ISABEL H. SAMPSON, J. M. DAVIS, LEO W. HEARTT, JOSEPH BROWN, TICER BROWN, RICHARD B. BRIGGS, MRS. ELLA R. SAMPSON, JAMES A. BLUE, MRS. BONNIE BLUE COVELL, E. B. McNEIL, J. L. McNEILL TRUST, J. J. McNEILL, JR., GEO. S. CROMARTIN, ARTHU[R] S. HARRIS, ANN TURNER CROMARTIE, R. H. COHN, MARY N. HOWERTON, J. R. HOWERTON, PHILIP T. HOWERTON, M.D., J. A. McLAUGHLIN, WAYNE M. CLEGHERN, DONALD W. WILSON, CHAS. A. DIXON, C. H. MORROW (OR MARROW), R. B. SLAVIN, J. DAVID WINGER, MRS. ROSA H. GREER, MRS. EVA M. HUMPHREYS, J. F. ROBERTSON, BILLY SHAW HOWELL, JR., MRS. E. G. HUTCHINSON, DR. CHARLES E. WALKER, CLARA H. CARSWELL HEIRS, J. H. HOWELL, E. Y. WEBB, R. G. VAUGHN, CYNTHIA VAUGHN PRICE, JOHN TRIMBLE, MATTIE C. SPENCER, MRS. LYNWOOD G. CRAIG, C. C. SPRINKLE, REV. J. C. SIMS, H. J. WATRONS, JIM WATRONS, J. E. GROVES, F. J. GOWDEY (OR GOWDY), HODGES C. GOWDEY, SLOCUM G. KENDALL (OR FRANCES SLOCUM GOWDEY), G. D. CLIFFORD, MARY E. LAZENBY, THOS. H. SOMERVILLE, JAMES DENWIDDIE (OR DENEVIDDIE) ESTATE, MISS LINDA (OR SUIDA) H. CHANEY, A. S. DE VLANING, MRS. THOMAS C. JOHNSON, R. E. CABELL, T. L. TRAWICK, C. B. MAHAN, ELIZABETH CHAFFIN, MISS FANNIE R. WILLIAMS, WM. C. BUCHANAN, ADAIR H. SANDERS, KATHLEEN ADAIR BROWN, MONTREAT CONCRETE AND BUILDING COMPANY, INC., C. H. ROBINSON & COMPANY, MONTREAT-ANDERSON COLLEGE, INC., AND MOUNTAIN RETREAT ASSOCIATION, INC.: TO EACH OF THE ABOVE, IF LIVING; IF DECEASED, TO THEIR HEIRS, DEVISEES, SUCCESSORS, TRANSFEREES, LEGAL REPRESENTATIVES OR ASSIGNS; AND TO THE SPOUSE OF EACH, IF ANY; AND TO THE BENEFICIARIES OR TRUSTEES OF EACH, IF ANY; AND TO ALL OTHER PERSONS, FIRMS, CORPORATIONS, ESTATES OR TRUSTS WHO NOW HAVE OR CLAIM, OR MAY HEREAFTER CLAIM, ANY RIGHT, TITLE OR INTEREST OR ESTATE IN AND TO THE PROPERTY DESCRIBED HEREIN, WHETHER SANE OR INSANE, ADULT OR MINOR, IN ESSE OR NOT IN ESSE OR EN VENTRE SA MERE, RESIDENT OR NONRESIDENT OF THE STATE OF NORTH CAROLINA, LIVE CORPORATION OR DISSOLVED CORPORATION

FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

No. 9228SC1040

(Filed 18 January 1994)

**1. Adverse Possession § 12 (NCI4th) — color of title — inadequate description of land — summary judgment for defendants proper**

The trial court in an action to quiet title properly entered summary judgment for defendants where plaintiffs could not show that the deed upon which they relied for possession under color of title contained an adequate description of the property; the description in the deed was incapable of being reduced to certainty by use of something extrinsic to which the deed referred; the "drawing" to which the deed referred did not have any ascertainable monuments, did not indicate the size of the tracts of land shown, did not indicate any courses and very few distances, had no ascertainable beginning point, and therefore was not sufficient to describe the land conveyed; and testimony by four surveyors that they could, by reference solely to the "drawing," identify the property on the ground added to and enlarged the description given in the "drawing" and thus was not competent.

**Am Jur 2d, Adverse Possession § 147.**

**2. Quieting Title § 9 (NCI4th) — action prematurely commenced — summary judgment proper**

Because an action to quiet title was commenced more than three months before plaintiffs could have acquired an interest in the property by virtue of adverse possession, the trial court properly entered summary judgment for all defendants on this basis.

**Am Jur 2d, Quieting Title and Determination of Adverse Claims §§ 36 et seq.**

**3. Appeal and Error § 209 (NCI4th) — inadequate notice of appeal — intent to appeal not fairly inferred**

Plaintiffs' intent to appeal from the denial of their motion to file a supplemental pleading could not be fairly inferred from plaintiffs' notice of appeal which stated that plaintiffs appealed from "the 28 May 1992 ORDER FOR PARTIAL SUMMARY JUDGMENT"; therefore, because plaintiffs failed to give proper notice of their intent to appeal the denial of their motion to file a supplemental pleading, under Rule 3 of the N.C.

Rules of Appellate Procedure, the Court of Appeals was without jurisdiction to review the trial court's denial of this motion.

**Am Jur 2d, Appeal and Error §§ 316 et seq.**

Judge ORR dissenting.

Appeal by plaintiffs from order entered 28 May 1992 in Buncombe County Superior Court by Judge Robert D. Lewis. Heard in the Court of Appeals 29 September 1993.

*Shuford, Best, Kelly, Cagle, Rowe, Brondyke & Wolcott, by E. Glenn Kelly, for plaintiff-appellants.*

*McGuire, Wood & Bissette, P.A., by Grant B. Osborne, for defendant-appellees.*

GREENE, Judge.

Kenneth J. Foreman, Jr., (Mr. Foreman) and Mary Frances O. Foreman (Mrs. Foreman) appeal from an order for summary judgment entered against them in their action to quiet title, pursuant to N.C. Gen. Stat. § 41-10 (1984), to 59 tracts of property located in or near the town of Montreat. Each of the deeds described below purport to convey the 59 tracts in controversy.

In February 1979, Mr. Foreman had a telephone conversation with Jeseppo Perrone (Mr. Perrone) in which Mr. Foreman told Mr. Perrone that he [Mr. Foreman] was interested in locating the heirs of "people who bought property in Buncombe County, North Carolina, from the Mountain Retreat Association in 1907 or shortly afterwards" for the purpose of buying the property from them. Mr. Foreman and Mr. Perrone did not speak with each other again until a few days before 17 June 1981, when Mr. Perrone called Mr. Foreman and told him that he [Mr. Perrone] had located the heirs and was willing to convey to Mr. Foreman the interest he [Mr. Perrone] had obtained if Mr. Foreman was ready to proceed. Mr. Foreman told Mr. Perrone that he was ready and that he wanted Mr. Perrone to execute the deed to "Kenneth J. Foreman, Jr., Trustee" on 17 June 1981. Mr. Perrone informed Mr. Foreman that he would be going on a trip, but that he would execute the deed on 17 June 1981 and see that Mr. Foreman received the deed. Mr. Foreman and Mr. Perrone, who had yet to meet in person, did not communicate with each other again until a few days before

15 September 1983 when Mr. Perrone telephoned Mr. Foreman to tell Mr. Foreman that he was ready to deliver the deed. Mr. Perrone and Mr. Foreman agreed to meet on 15 September 1983 at the entrance to the Radisson Hotel in Charlotte at three p.m. to deliver the deed. On 15 September, Mr. Foreman met Mr. Perrone on the sidewalk outside the Radisson Hotel in Charlotte where Mr. Perrone handed Mr. Foreman an envelope containing a quit-claim deed, which Mr. Foreman examined, before paying Mr. Perrone $2,400. This deed (hereinafter referred to as "the Perrone deed") dated 17 June 1981, listed 75 different tracts of land as the property conveyed, indicated that "Kenneth J. Foreman, Jr., Trustee" was the named grantee, and was recorded in the Buncombe County Register of Deeds on 19 September 1983 at 3:53 p.m. The 59 tracts of property, the subject of this lawsuit, constitute a portion of the 75 tracts described in the Perrone deed. Of the 59 tracts, 41 are described by reference to a 1906 drawing recorded in the Buncombe County Register of Deeds at Plat Book 154 at Pages 1, 2, and 3 (the Drawing) and by reference to a 1935 map recorded in Plat Book 16 at Pages 92-97. It is not disputed that the 1935 map does not include the 41 tracts. The 1906 Drawing reveals: a legend entitled "Map of Montreat . . . And Situated In Buncombe County, N.C. 1906"; a North Arrow aligned with the magnetic meridian; a statement of scale of "300 feet to an inch"; over 1000 platted and numbered lots; distances shown on many, but not all, lot lines; numerous buildings shown on various lots; numerous streets; the absence of any physical evidence of a fixed point on the ground, such as a concrete or pipe marker; with very few exceptions, the bearings of the lines are not depicted; the radius or arc distance or chord length, chord bearing and tangent distance of any arc are not shown; and nothing in the drawing refers to anything which can be located or identified with certainty.

On 19 September 1983 at 3:54 p.m., Mr. Foreman recorded a "Declaration of Trust" dated 17 June 1981 wherein he declared that he would hold the property described in the Perrone deed "IN TRUST . . . [f]or the use and benefit of [his] Wife Mary Frances Ogden Foreman." On 11 October 1983 at 4:45 p.m., a quit-claim deed dated 21 July 1981 was recorded wherein Mr. Foreman, as trustee, conveyed the 75 tracts of land to himself in his individual capacity. On 11 October 1983 at 4:47 p.m., a "Declaration of Trust" dated 6 August 1981 was recorded wherein Mr. and Mrs. Foreman placed the 75 tracts of land "IN TRUST . . . [f]or the use and benefit

of [their] [s]ons." On 11 October 1983 at 4:51 p.m., a quit-claim deed dated 6 August 1981 was recorded wherein Mr. Foreman conveyed the same 75 tracts of land to himself and his wife "as Joint Trustees under the terms of" the 6 August 1981 declaration of trust.

Mr. and Mrs. Foreman (plaintiffs), as trustees under the August 1981 declaration of trust, filed suit in the Buncombe County Superior Court on 25 May 1990 seeking to quiet title to 59 of the tracts of land conveyed to them in the quit-claim deed dated 6 August 1981. Plaintiffs claim, pursuant to N.C. Gen. Stat. § 1-38 (1983), that they "under known and visible lines and boundaries" have "for more than seven (7) years" "asserted continuous, open, notorious and hostile adverse possession of [the premises in question] under color of title since [the] 17th day of June, 1981," and should thus be declared the owners in fee simple of the land in question.

A group of defendants (hereinafter referred to as the Exhibit A defendants) moved for summary judgment on 21 February 1992, on the ground that plaintiffs had not exercised adverse possession under color of title because the deed upon which plaintiffs relied to establish color of title did not sufficiently describe the property purportedly conveyed. The Exhibit A defendants claim to own the 41 tracts of land described by reference to the Drawing. There is no dispute that the property claimed by the remaining defendants (hereinafter described as Exhibit B defendants) is sufficiently described by the Perrone deed.

The Exhibit A defendants, as well as the Exhibit B defendants, also moved for summary judgment on the ground that, as to all 59 lots, the plaintiffs failed to possess the lots under color of title for seven years prior to the commencement of plaintiffs' action to quiet title. In response to this motion, plaintiffs, on 4 March 1992, moved to supplement their complaint pursuant to Rule 15(d) of the North Carolina Rules of Civil Procedure to allege transactions and occurrences or events which had happened after the complaint was filed. Specifically, plaintiffs' supplemented complaint would have alleged that plaintiffs had remained in adverse possession of the 59 lots after the original complaint was filed.

At the summary judgment hearing, Exhibit A defendants offered the affidavits of three surveyors who stated that it was impossible, using the Drawing, "to fit with certainty any intended description in any of the Drawings to any particular parcel of

FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

land by correlating (a) any such lot corner with (b) physical evidence of any apparent corner or point that may now appear on the ground." Plaintiffs offered counter-affidavits of four surveyors who stated that the information contained in the 1906 Drawing "is sufficient for all Lots shown therein to be located on the ground with certainty by a competent surveyor following generally accepted practices for locating Buncombe County mountain land."

On 28 May 1992, a hearing was held and on 23 July 1992, Judge Robert D. Lewis granted Exhibit A defendants' motions for summary judgment on the ground that the deed upon which plaintiffs relied contained an insufficient description of 41 of the 59 lots. The order also granted both Exhibit A and Exhibit B defendants' motions for summary judgment on the ground that seven years had not run from the time plaintiffs claimed to have obtained color of title until the time they commenced this action, and denied plaintiffs' motion to file supplemental pleadings. The court then entered a final judgment against plaintiffs on all of plaintiffs' claims. On 25 June 1992, plaintiffs filed a notice of appeal from "the 28 May 1992 ORDER FOR PARTIAL SUMMARY JUDGMENT."

---

The issues presented are whether: (I) the description of the 41 tracts of land is adequate to create color of title; (II) the seven-year statutory period under N.C. Gen. Stat. § 1-38 had run at the time this action was instituted; and (III) plaintiffs' notice of appeal confers jurisdiction upon this Court to determine whether the trial court erred by denying plaintiffs' motion to supplement their pleadings to allege facts and events which occurred after the action was instituted.

I

[1] An essential element of plaintiffs' claims is "possession of . . . real property . . . under color of title." N.C.G.S. § 1-38(a) (1983). Thus, Exhibit A defendants are entitled to summary judgment if they can show that plaintiffs are unable to prove the existence of this essential element of their claim. *See Best v. Perry*, 41 N.C. App. 107, 109-10, 254 S.E.2d 281, 283 (1979).

All conveyances purporting to be color of title, including deeds, must contain, as an essential element of the conveyance, "a description identifying the land." *McDaris v. Breit Bar "T" Corp.*, 265 N.C. 298, 300, 144 S.E.2d 59, 61 (1965); *Carrow v. Davis*, 248 N.C.

740, 741, 105 S.E.2d 60, 61 (1958) (the instrument purporting to be color of title must adequately describe the land). If the conveyance does not contain such a description, it is void. *Overton v. Boyce*, 289 N.C. 291, 293, 221 S.E.2d 347, 349 (1976). The description must be "either certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which the deed refers." *Duckett v. Lyda*, 223 N.C. 356, 358, 26 S.E.2d 918, 919 (1943). "It is the deed that must speak . . . [and] oral evidence must only interpret what has been said therein." *Id.* at 359, 26 S.E.2d at 920. In other words, a "description, although indefinite, is sufficient if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed." 2 C.J.S. *Adverse Possession* § 108, at 802 (1972).

In speaking on the subject of insufficient descriptions of property contained in deeds, our Supreme Court in *Overton* stated:

When it is apparent upon the face of the deed, itself, that there is uncertainty as to the land intended to be conveyed and the deed, itself, refers to nothing extrinsic by which such uncertainty can be resolved, the description is said to be patently ambiguous. As Justice Barnhill, later Chief Justice, speaking for the Court, said in *Thompson v. Umberger*, 221 N.C. 178, 19 S.E.2d 484, "[A] patent ambiguity is such an uncertainty appearing on the face of the instrument that the Court, reading the language in the light of all the facts and circumstances *referred to in the instrument*, is unable to derive *therefrom* the intention of the parties as to what land was to be conveyed." Parol evidence may not be introduced to remove a patent ambiguity since to do so would not be a use of such evidence to fit the description to the land but a use of such evidence to create a description by adding to the words of the instrument.

*Overton*, 289 N.C. at 294, 221 S.E.2d at 349 (emphases and brackets in original) (citations omitted). "Whether a description is patently ambiguous is a question of law." *Kidd v. Early*, 289 N.C. 343, 353, 222 S.E.2d 392, 400 (1976).

In this case, the deed upon which plaintiffs rely to establish color of title describes the property with reference to a drawing recorded in the Buncombe County Register of Deeds and known as the Drawing. Thus the Drawing " 'becomes a part of the deed

as if it were written therein.'" *Kelly v. King*, 225 N.C. 709, 716, 36 S.E.2d 220, 224 (1945) (quoting *Home Real Estate Loan & Ins. Co. v. Town of Carolina Beach*, 216 N.C. 778, 786, 7 S.E.2d 13 (1940) ). The question, therefore, is whether the Drawing provides a "description having the same degree of certainty as [is] required of a description appearing only in the deed itself." 6 George W. Thompson, *Thompson on Real Property* § 3052, at 608 (1962). The Drawing without question is not sufficient in itself to describe the land conveyed. The Drawing does not have any ascertainable monuments, does not indicate the size of the tracts of land shown, does not indicate any courses and very few distances, and has no ascertainable beginning point. *See* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 184, at 226-27 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 3d ed. 1988) [hereinafter *Webster*] (valid metes and bounds description must contain a certain starting point and the direction and length of each boundary line). The only issue is whether the description in the deed is capable of being reduced to certainty by use of something extrinsic to which the deed refers. We do not believe it is. The Drawing simply does not refer to anything extrinsic that would be of aid in identifying the property with certainty. The four surveyors, offered by plaintiffs, testified that they could, by reference solely to the Drawing, identify the property on the ground. This testimony, however, added to and enlarged the description given in the Drawing and was thus not competent. *See Overton*, 289 N.C. at 294, 221 S.E.2d at 349.

Accordingly, because the Exhibit A defendants have shown that plaintiffs cannot prove an essential element of their claim— that the deed upon which plaintiffs rely contains an adequate description of the property—the trial court did not err in granting summary judgment for the Exhibit A defendants.

II

[2] Another essential element of a claim of adverse possession is that the claimant possess the property under color of title "for seven years," before the action is filed. N.C.G.S. § 1-38(a) (1983); *Heath v. Turner*, 309 N.C. 483, 489, 308 S.E.2d 244, 246 (1983). Where the adverse claimant and the opposing party derive their title from the same source, the seven-year period does not begin to run until the instrument purporting to convey title is recorded. *Anderson v. Walker*, 190 N.C. 826, 829, 130 S.E. 840, 841 (1925).

FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

Where, however, the adverse claimant and the opposing party derive their title from independent sources, as is the case here, recordation is irrelevant, *see* Webster § 294, at 361 n.78, and the seven-year period begins to run when the adverse claimant obtains color of title and that does not occur until the conveyance, if a deed, is delivered. *Avent v. Arrington*, 105 N.C. 377, 388-89, 10 S.E. 991, 995 (1890); *Chastien v. Philips*, 33 N.C. 255, 257-58 (1850); *see* 2 C.J.S. *Adverse Possession* § 109, at 804 (1972). Other procedural defects

> such as the omission of a seal, the lack of a privy exam, the unconstitutionality of a statute, and the failure to make all owners of the property parties to a suit in which a judgment affecting the title is rendered have all been held no obstacle to the instrument's ability to serve as color of title.

Monica K. Kalo, *The Doctrine of Color of Title in North Carolina*, 13 N.C. Cent. L.J. 123, 145 (1982).

In this case, the Perrone deed, which is the source of title to all the subsequent deeds executed by Mr. Foreman, was not delivered until 15 September 1983, and thus the seven-year period could not begin to run until that date. In so holding we reject the argument of plaintiffs that the seven years began to run on 6 August 1981 when Mr. Foreman conveyed the property to himself and Mrs. Foreman as trustees. A person cannot create color of title in himself while at the same time contending that the source of his title is another person from whom he has not yet received a deed. *See* 2 C.J.S. *Adverse Possession* § 112, at 808 (1972) (grantee cannot rely on deed as color of title where grantee knew that grantor did not have title to the land). Because this cause of action was commenced on 25 May 1990, more than three months before the plaintiffs could have acquired an interest in the property by virtue of adverse possession, the trial court correctly entered summary judgment for all defendants on this basis.

### III

[3] Rule 3(d) of the North Carolina Rules of Appellate Procedure provides:

> The notice of appeal required to be filed and served by subdivision (a) of this rule shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken; and

FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record.

N.C. R. App. P. 3(d) (1993).

Rule 3 is jurisdictional, and if the requirements of the rule are not complied with, the appeal must be dismissed. *Currin-Dillehay Bldg. Supply, Inc. v. Frazier*, 100 N.C. App. 188, 189, 394 S.E.2d 683, *appeal dismissed and disc. rev. denied*, 327 N.C. 633, 399 S.E.2d 326 (1990); *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990). Furthermore, an appellant "must appeal from each part of the judgment or order appealed from which appellant desires the appellate court to consider." *Smith v. Independent Life Ins. Co.*, 43 N.C. App. 269, 272, 258 S.E.2d 864, 866 (1979).

Despite these principles, we may liberally construe a notice of appeal in one of two ways to determine whether it provides jurisdiction over an apparently unspecified portion of a judgment. First, "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake" [citing *Smith*]. Second, if a party technically fails to comply with procedural requirements in filing papers with the court, the court may determine that the party complied with the rule if the party accomplishes the "*functional equivalent*" of the requirement.

*Von Ramm*, 99 N.C. App. at 156-57, 392 S.E.2d at 424 (emphases in original) (citations omitted). The second exception stated above is inapplicable to this case because plaintiffs did not "technically fail[ ] to comply with procedural requirements in filing papers with the court."

The question then is whether plaintiffs' intent to appeal from the denial of their motion to file supplemental pleading can be "fairly inferred" from plaintiffs' notice of appeal, which states that plaintiffs appeal from "the 28 May 1992 ORDER FOR PARTIAL SUMMARY JUDGMENT." We cannot fairly infer from plaintiffs' notice of appeal an intent to appeal the denial of their motion to file supplemental pleading.

FOREMAN v. SHOLL

[113 N.C. App. 282 (1994)]

The present case is unlike *Smith*, wherein a trial court granted summary judgment to defendants and sustained defendants' defense that plaintiff had failed to state a claim. The appellant in *Smith* gave notice of appeal only from the entry of summary judgment, but this Court held that the appellant's intent to appeal from the portion of the order sustaining the failure to state a claim defense could be fairly inferred because "[p]laintiff's obvious intent could not have been to challenge only part of [the] order where the portion not challenged was sufficient to dismiss her entire claim." *Smith*, 43 N.C. App. at 274, 258 S.E.2d at 867.

In this case, the portion of the order not specified in plaintiffs' notice of appeal was not sufficient to dismiss plaintiffs' entire claim. Plaintiffs in this case had three apparently viable grounds for appeal, first, that the description contained in their deed was adequate, second, that the seven-year period required for adverse possession under color of title begins to run from the time the document creating color of title is executed, and third, that the trial court erred in denying their motion to file supplemental pleading. Plaintiffs' notice of appeal unambiguously states plaintiffs' intent to pursue the first two grounds, but there is nothing in the notice of appeal from which defendants, or this Court, could fairly infer that plaintiffs intended to pursue the third ground on appeal.

Accordingly, plaintiffs failed to properly give notice of their intent to appeal the denial of their motion to file supplemental pleading and, under Rule 3 of the North Carolina Rules of Appellate Procedure, this Court is without jurisdiction to review the trial court's denial of this motion.

Affirmed.

Judge EAGLES concurs.

Judge ORR dissents with separate opinion.

Judge ORR dissenting.

Here we have two groups of surveyors disagreeing in their respective affidavits as to whether the description of the land in question was adequate and could be located with certainty on the ground. With this conflict in the evidence, summary judgment would not be appropriate to determine this issue. In addition, the trial

court should have allowed plaintiffs' motion to amend so as to satisfy the seven-year requirement for color of title. For these reasons, I respectfully dissent.