TOWN OF CARY v. FRANKLIN-SLOAN V.F.W. POST 7383

[115 N.C. App. 113 (1994)]

———

TOWN OF CARY v. FRANKLIN-SLOAN V.F.W. POST 7383, VETERANS OF FOREIGN WARS OF THE UNITED STATES

No. 9310SC805

(Filed 7 June 1994)

**Dedication § 11 (NCI4th)— site plan to obtain special use permit—thoroughfare marked—insufficient description—no dedication**

An 80-foot proposed thoroughfare on defendant's site plan which was submitted to plaintiff in order to get a special use permit was insufficient to constitute a dedication, since the site plan contained only two lines consisting of a series of dashes with no markings indicating distances or bearings, with the words "80

foot proposed thoroughfare" written between the two lines; the plan did not have any ascertainable monuments; and there was no information attempting to locate the right of way on the property. N.C.G.S. § 160A-381.

**Am Jur 2d, Dedication §§ 29-33.**

Appeal by plaintiff from judgment entered 17 March 1993 in Wake County Superior Court by Judge Robert L. Farmer. Heard in the Court of Appeals 19 April 1994.

*Wishart, Norris, Henninger & Pittman, P.A., by June K. Allison, and Charles Henderson, Town Attorney, for plaintiff-appellant.*

*Young Moore Henderson & Alvis P.A., by Henry S. Manning and Evelyn M. Coman, for defendant-appellees.*

GREENE, Judge.

The Town of Cary, North Carolina (the Town), appeals from an order dated 17 March 1993 in Wake County Superior Court, ordering that the Town compensate Franklin-Sloan V.F.W. Post 7383, Veterans of Foreign Wars of the United States (VFW) for a 100 foot right-of-way running through VFW's property.

In 1978, VFW acquired property zoned R-30 (residential) in the Town. In 1979, VFW's governing officers voted to establish a post home on the property, a use not permitted of right because it was zoned R-30. Dennis G. Beck (Beck), who represented VFW, learned that VFW would have to obtain a special use permit to have a post home and that the Town would have to approve VFW's site plan pursuant to Section 11-25 of the Town's Planning, Zoning, Subdivision, and Sedimentation Ordinance. On 13 August 1979, Beck appeared before the Town's Board of Adjustment which unanimously approved a Special Use Permit for VFW. On 15 October 1979, the Town's Planning and Zoning Board (the Board) approved the site plan with a notation in the minutes that a "right-of-way dedication for a section of Maynard Road is required." The site plan shows a 4.999 acre tract of land with the west end of the property adjoining Reedy Creek Road. On the east end, the site plan reveals two apparently parallel lines consisting of a series of dashes. The lines have no markings indicating distances or bearings. Between the two lines is written the words "80 foot proposed thoroughfare." There is no information on the site plan which attempts to locate the right-of-way on the prop-

erty. On 25 October 1979, the Town Council unanimously approved the Board's recommendation to approve VFW's site plan. VFW built the post home and has since used the property in accordance with its special use permit.

On 20 October 1989, the Town filed a complaint, declaration of taking, and notice of deposit in Wake County Superior Court, alleging that VFW, on 25 October 1979, had dedicated, for zero compensation, an 80 foot right-of-way on Maynard Road to the Town by virtue of VFW's obtaining a special use permit, and attempting to acquire an additional 20 feet by condemnation. VFW filed an answer and counterclaim, denying it dedicated any land to the Town and alleging it intended only to reserve and agree not to build on the 80 foot area in question.

A non-jury trial was held in which Beck testified that during the site plan approval process in 1979 and 1980, Reedy Creek Road was the only road that served the VFW property, VFW was not aware of the Town's thoroughfare plan at that time, and VFW "had no agreement" with the Town "regarding the right-of-way for Maynard Road at the time of the site plan approval process." Beck also stated that VFW did not "sign anything conveying an interest in its property to the town." As "VFW's representative for the site plan approval process," Beck "was never authorized by any member or officer" of VFW to agree to donate the Maynard Road right-of-way to the Town at no cost. The right-of-way was included on the site plan to show that the area "would be kept open but never given to the town," and there has been "no . . . road [easement] . . . that had been recorded." Furthermore, "that word dedication was not discussed or explained when [VFW] went through that process of getting site plan approval." VFW, which had maintained the area reserved for the right-of-way since 1979, first learned the Town was claiming an interest in the Maynard Road right-of-way in 1988. The site plan that was ultimately approved included the Maynard Road thoroughfare because Beck "was told that it was only a proposal. It was—nothing was ever going to be done with it in the future, and that's why we said, hey, in that area we would reserve that area for the road. We didn't object to it, but we— we weren't going to give it away."

Mike Sorensen (Sorensen), the assistant planning director with the Town in 1979, testified that Maynard Road was on the Town's thoroughfare plan to serve traffic, and that through reviewing the meeting minutes from 13 August 1979, "the board of adjustment was

requiring dedication of a right-of-way as a condition for the issuance of the special use permit" to VFW because "it's tied into the thoroughfare plan," and there was indication at that meeting that VFW was aware of the thoroughfare plan. Sorensen stated that in 1979, when the site plan was approved, there was no metes and bounds location for Maynard Road, the Town "did not have a time schedule for that road," and he was "not aware" if the Town ever got anything in writing from VFW concerning the Maynard Road right-of-way. After Sorensen reviewed the minutes of the 15 October 1979 planning and zoning board meeting in which he indicated the proposed thoroughfare had been "set aside for the Maynard loop," he stated that the words set aside meant "dedicated for future use." He also testified that VFW used its property for post purposes for more than ten years before Maynard Road was built.

The trial court, in its 17 March 1993 order, made the following pertinent findings of fact:

> 6. As a condition to obtaining site plan approval, the VFW was required to sketch in on the site plan a proposed 80 foot wide corridor for the possible future extension of Maynard Road.

> 7. The VFW agreed that it would erect no improvements on the rear or easternmost portion of their property where this proposed corridor was located, and it did not do so. The showing of the proposed corridor on the VFW site plan was not a conveyance or dedication of the corridor to the Town. No metes and bounds description of the corridor was given.

The court concluded VFW never dedicated or conveyed any of its real property to the Town "for the Maynard Road Extension Project," and "[t]he acquisition of the entire 100 foot right of way for the Maynard Road Extension is a lawful taking by the Town of Cary for the full amount of which compensation must be paid to the VFW." The court then ordered the Town to compensate VFW for the entire right-of-way for the Maynard Road Extension running through VFW's property.

The issue presented is whether the description of the "80 foot proposed thoroughfare" on the VFW site plan is sufficient to constitute a dedication.

N.C. Gen. Stat. § 160A-381, which grants municipalities the power to place conditions on the issuance of special use permits, states that

"such conditions may include requirements that street and utility rights-of-way be dedicated to the public" "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community." N.C.G.S. § 160A-381 (1987). Pursuant to this statute, the Town enacted Section 11-25 which provides "[i]n the development of any property for which a site plan is required by Subsection (a) of this Section, the owner or developer shall be required to dedicate any additional right-of-way necessary to the width required by the Town thoroughfare plan for streets adjoining the property. . . ." Cary, North Carolina, Code § 11-25(d).

Assuming the constitutionality of the ordinance permitting the Town to require dedication of a right-of-way across the VFW property as a condition of obtaining a special use permit, *see* 6 *Powell, Law of Real Property* § 866.3[1] (1984) ("if applicant must donate property for a public use that bears no relationship to the benefit conferred on the applicant . . . there is a taking of property"), the Town's claim must nonetheless fail because it granted the special use permit without demanding, as a condition precedent, the dedication of the right-of-way. A dedication of a street can occur, in the context of this ordinance, only if the site plan contains an adequate description of the street. *See* 2 *Thompson on Real Property* § 369, at 465 (1961) (map must reflect both bearings and length of street); 23 *Am. Jur.* 2d *Dedication* § 39, at 36 (1983) (under ordinance requiring dedication, plat or other instrument must particularly describe and designate land proposed to be dedicated); *Farmville v. Monk & Co.*, 250 N.C. 171, 108 S.E.2d 479 (1959) (conveyance of land describing street as boundary without any reference to plat or map and without a street in existence at time of conveyance is insufficient to show dedication of any part of land as a street). An adequate description is one which is "either certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which the deed refers," *Duckett v. Lyda*, 223 N.C. 356, 358, 26 S.E.2d 918, 919 (1943); therefore, an indefinite description will suffice only "if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed." *Foreman v. Sholl*, 113 N.C. App. 282, 288, 439 S.E.2d 169, 173 (1994) (quoting 2 C.J.S. *Adverse Possession* § 108, at 802 (1972)). For example, a drawing which "does not have any ascertainable monuments, does not indicate the size of the tracts of land shown, does not indicate any courses and very few distances, and has no ascertain-

able beginning point" is not a sufficient description. *Id.* at 289, 439 S.E.2d at 174.

In this case, the site plan only contains two lines consisting of a series of dashes with no markings indicating distances or bearings, with the words "80 foot proposed thoroughfare" written between the two lines. The plan "does not have any ascertainable monuments," and there is no information attempting to locate the right-of-way on the property. Because of the insufficiency of the description of the proposed thoroughfare, the trial court did not err in determining that VFW did not dedicate any portion of its land to the Town.

Affirmed.

Chief Judge ARNOLD and Judge McCRODDEN concur.